Matthew J. Langley (SBN 342286)
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, IL 60614
Tel: (773) 554-9354
E: *matt@almeidalawgroup.com*

Sonjay C. Singh (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
400 East Pratt Street
8th Floor - #16946751
Baltimore, MD 21202
Tel: (772) 783-8436
E: *ssingh@sirillp.com*

*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

MICHAEL NIGRO, RICHARD MAIA, KERI ABELL, HEIDI FENTON, EVELYN HERNANDEZ, and ERIKA GARCIA, *on behalf of themselves and all others similarly situated*,

Plaintiffs,

v.

SLEEPCARE LLC D/B/A DAYBREAK,

Defendant.

Case No. 2:26-cv-01309-CKD

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**

Hon. Carolyn K. Delaney

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT .......... 1

II. LEGAL STANDARD .......... 3

III. ARGUMENT .......... 3

A. PLAINTIFFS ALLEGE INJURY-IN-FACT SUFFICIENT FOR ARTICLE III STANDING. .......... 3

i. Legal Standard. .......... 4

ii. Daybreak's Disclosure of Plaintiffs' Sensitive Health Information Inflicted a Cognizable Privacy Injury under Article III. .......... 5

B. PLAINTIFFS' ECPA CLAIM IS MERITORIOUS. .......... 9

i. Daybreak's Alleged Violation of HIPAA Is Sufficient to Invoke the Crime-Tort Exception. .......... 9

ii. Plaintiffs Allege a Criminal and/or Tortious Purpose Separate from the Predicate Interception. .......... 10

iii. Daybreak's Purported Financial Motive Does Not Shield It from Liability. .......... 12

C. PLAINTIFFS' INVASION OF PRIVACY CLAIM IS PROPER. .......... 14

i. Plaintiffs Allege an Intrusion into Their Privacy. .......... 14

ii. Daybreak's Intrusion Was Highly Offensive. .......... 17

D. PLAINTIFFS PROPERLY ALLEGE A CLAIM FOR NEGLIGENCE. .......... 17

i. Benefit of The Bargain. .......... 18

ii. Diminution of Value. .......... 18

iii. Invasion of Privacy. .......... 19

E. PLAINTIFFS' IMPLIED CONTRACT CLAIM IS WELL PLED. .......... 20

F. PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS PROPER .......... 22

G. PLAINTIFFS' BREACH OF CONFIDENCE CLAIM IS SUFFICIENTLY PLED .......... 24

IV. CONCLUSION .......... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.J. v. LMND Med. Grp.*, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. 2024) .......... 24

*In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130 (C.D. Cal. 2021) .......... 21, 24, 25

*In re Anthem Inc. Data Breach Litig.*, 2016 U.S. Dist. LEXIS 70594 (N.D. Cal. 2016) .......... 22

*Aquino-Roraldo v. Med. Mgmt. Int'l, Inc.*, 2026 U.S. Dist. LEXIS 90289 (D. Or. 2026) .......... 5

*Archambault v. Riverside Resort & Casino, Inc.*, 2025 U.S. Dist. LEXIS 176564 (D. Nev. 2025) .......... 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 3

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) .......... 22

*B.K. v. Desert Care Network*, 2024 U.S. Dist. LEXIS 18970 (C.D. Cal. 2024) .......... 11, 17, 19

*B.N. v. Or. Reprod. Med., LLC*, 2025 U.S. Dist. LEXIS 222638 (D. Or. 2025) .......... 13

*In re BetterHelp, Inc. Data Disclosure Cases*, 2024 U.S. Dist. LEXIS 187442 (N.D. Cal. 2024) .......... 6, 10, 21

*Bradshaw v. Lowe's Co.*, 2025 U.S. Dist. LEXIS 223830 (S.D. Cal. 2025) .......... 7

*C.M. v. MarinHealth Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 10189 (N.D. Cal. 2024) .......... 21, 23

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996) .......... 3

*Campbell v. Honey Sci., LLC*,
2026 U.S. Dist. LEXIS 133176 (N.D. Cal. 2026) .......... 7

*Campbell v. Select Med. Corp.*,
2026 U.S. Dist. LEXIS 156088 (C.D. Cal. 2026) .......... 5, 12

*Castillo v. Costco Wholesale Corp.*,
2024 U.S. Dist. LEXIS 207197 (W.D. Wash. 2024) .......... 10, 11

*Castillo v. Seagate Tech., LLC*,
2016 U.S. Dist. LEXIS 187428 (N.D. Cal. 2016) .......... 21

*Chatrie v. United States*,
225 L.Ed.2d 793 (U.S. 2026) .......... 14

*Cherkin v. PowerSchool Holdings, Inc.*,
2025 U.S. Dist. LEXIS 48424 (N.D. Cal. 2025) .......... 15

*Cheung v. Slickdeals, LLC*,
2026 U.S. Dist. LEXIS 143937 (C.D. Cal. 2026) .......... 23

*D'Antonio v. Smith & Wesson Inc.*,
2026 U.S. Dist. LEXIS 32257 (N.D. Cal. 2026) .......... 15

*D.B. v. Bellesa Enters. U.S. Inc.*,
2026 U.S. Dist. LEXIS 156101 (C.D. Cal. 2026) .......... 23

*Deivaprakash v. Condé Nast Digit.*,
2025 U.S. Dist. LEXIS 172906 (N.D. Cal. 2025) .......... 5

*Dent v. Nat'l Football League*,
902 F.3d 1109 (9th Cir. 2018) .......... 17

*Doe v. Call-On Doc*,
2025 U.S. Dist. LEXIS 113269 (S.D. Cal. 2025) .......... 16

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 U.S. Dist. LEXIS 66733 (N.D. Cal. 2024) .......... 20

*Doe v. N. Cal. Fertility Med. Ctr.*,
2024 U.S. Dist. LEXIS 12175 (E.D. Cal. 2024) .......... 17, 18

*Doe v. Regents of the Univ. of Cal.*,
672 F. Supp. 3d 813 (N.D. Cal. 2023)........................................................6, 17

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) ......................................................11, 13

*E.H. v. Lifelong Adoptions, Inc.*,
2026 U.S. Dist. LEXIS 164906 (E.D. Cal. 2026) ............................................24

*ESG Capital Partners, Ltd. P'ship v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) .......................................................................22

*In re Facebook, Inc.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019)...............................................................20

*Fraley v. Facebook, Inc.*,
830 F. Supp. 2d 785 (N.D. Cal. 2011)...............................................................21

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025)..........................................................7, 23

*Gaige v. Exer Holding Co., LLC*,
2025 U.S. Dist. LEXIS 17146 (C.D. Cal. 2025) ..............................................11

*Gliksman v. Healthline Media, LLC*,
2026 U.S. Dist. LEXIS 147639 (N.D. Cal. 2026)...............................................6

*I.T. v. ChoicePoint LLC*,
2025 U.S. Dist. LEXIS 169202 (W.D. Wash. 2025) ..................................11, 12

*Ji v. Naver Corp.*,
2023 U.S. Dist. LEXIS 178311 (N.D. Cal. 2023)............................................19

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023)...............................................................................5

*K.L. v. Legacy Health*,
2024 U.S. Dist. LEXIS 206864 (D. Or. 2024) ..................................................11

*Katz-Lacabe v. Oracle Am., Inc.*,
2023 U.S. Dist. LEXIS 178369 (N.D. Cal. 2023)............................................24

*Knappenberger v. City of Phoenix*,
566 F.3d 936 (9th Cir. 2009) ........................................................................ 3

*Lau v. Gen. Digit. Inc.*,
2024 U.S. Dist. LEXIS 81310 (N.D. Cal. 2024) ............................................... 16

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ............................................................ 17

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998) ...................................................................... 15

*Nucal Foods v. Quality Egg LLC*,
918 F. Supp. 2d 1023 (E.D. Cal. 2013) ........................................................... 19

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) ............................................................ 16

*Plaintiffs v. MGM Resorts Int'l*,
638 F. Supp. 3d 1175 (D. Nev. 2022) ......................................................... 18, 19

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .................................................................... 4, 6, 7

*Price v. Converse, Inc.*,
805 F. Supp. 3d 1102 (C.D. Cal. 2025) ............................................................ 7

*Pruchnicki v. Envision Healthcare Corp.*,
430 F. Supp. 3d 1226 (D. Nev. 2020), *aff'd*, 845 Fed. App'x 613 (9th Cir. 2021) ........................................................................................ 18

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ..................................................... 8, 11, 13

*R.S. v. Prime Healthcare Servs.*,
2025 U.S. Dist. LEXIS 6338 (C.D. Cal. 2025) ........................................ 3, 10, 13

*Ramirez v. Lasikmd USA, Inc.*,
2026 U.S. Dist. LEXIS 14108 (S.D. Cal. 2026) ................................................. 6

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......................................................... 13

*Rudolph v. Hudson's Bay Co.*,
2019 U.S. Dist. LEXIS 77665 (S.D.N.Y. 2019) ....... 21

*Sanchez-Scott v. Alza Pharm.*,
86 Cal. App. 4th 365 (Ct. App. 2001) ....... 15

*Sanders v. Am. Broad. Companies, Inc.*,
20 Cal. 4th 907 (1999) ....... 15

*Shah v. MyFitnessPal, Inc.*,
824 F. Supp. 3d 906 (N.D. Cal. 2026) ....... 4

*Silver v. Stripe Inc.*,
2021 U.S. Dist. LEXIS 141090 (N.D. Cal. 2021) ....... 14, 17

*Sloan v. Verily Life Scis. LLC*,
2025 U.S. Dist. LEXIS 175076 (N.D. Cal. 2025) ....... 22

*Smith v. Findlay Auto., Inc.*,
2025 U.S. Dist. LEXIS 60934 (D. Nev. 2025) ....... 18

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 U.S. Dist. LEXIS 179067 (N.D. Cal. 2024) ....... 17

*Stein v. Edward-Elmhurst Health*,
2025 U.S. Dist. LEXIS 31273 (N.D. Ill. 2025) ....... 10

*Toy v. Life Line Screening of Am. Ltd.*,
2024 U.S. Dist. LEXIS 88872 (N.D. Cal. 2024) ....... 25

*TransUnion. D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ....... 5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ....... 4

*Wright v. TrueCare Prop. Holdings, LLC*,
2025 U.S. Dist. LEXIS 229707 (S.D. Cal. 2025) ....... 8, 14

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
2017 U.S. Dist. LEXIS 140212 (N.D. Cal. 2017) ....... 21

**Statutes**

18 U.S.C. § 2511(1)(c)-(d) ........................................................................................ 9

18 U.S.C. § 2511(2)(d) ........................................................................................ 9, 10

## I. PRELIMINARY STATEMENT

Healthcare information is among the most sensitive and private information about a person. It is also among the most valuable. Defendant SleepCare LLC d/b/a Daybreak ("Defendant" or "Daybreak") knew this when, without prior authorization from Plaintiffs, it collected and shared Plaintiffs' sensitive personal and healthcare information with third-parties, including Google and Facebook, two of the largest advertising companies in the world.

Daybreak is a medical device provider which manufactures, markets and sells the Daybreak Device, a sleep apnea treatment product. As part of its sales operation, Daybreak operates a website located at www.thedaybreak.com (the "Website") where patients can research its products including by using the Daybreak Sleep Apnea Assessment (the "Assessment"), an online diagnostic quiz which collects medical information from Website users to determine whether the Daybreak Device is suitable for their use. Plaintiffs are individuals who took the Assessment through the Website. When they did so, Plaintiffs believed that their medical information, including the confidential medical information that they provided through the Assessment, would be held to the standard of confidentiality expected for such sensitive information. Unfortunately, it was not.

Unbeknownst to Plaintiffs, Daybreak installed advertising surveillance software, including third-party tracking pixels, produced by Google and Facebook (the "Tracking Tools") on the Website and, in exchange for advanced marketing and advertising services, allowed the internet behemoths to collect sensitive, protected health information from users of the Website for the purpose of engaging in targeted advertising. This information includes (i) information provided by users through the Assessment, including whether the user has been diagnosed with sleep apnea, whether the user has used CPAP, whether the user has undergone a sleep test in the past two years, and the specific sleep apnea symptoms the user has experienced, such as

disruptive snoring or daytime fatigue; (ii) the outcome of the user's completed Sleep Apnea Assessment; and (iii) the medical products and tests ordered through the Website by the user (collectively, the "Sensitive Health Information"). ECF No. 12 (the "Complaint" or "FAC") ¶ 6. Moreover, Plaintiffs' Sensitive Health Information was transmitted to Google and Facebook along with specific Google and Facebook cookie identifiers, which uniquely identified Plaintiffs through their Google and Facebook accounts. *Id*. ¶¶ 107-109.

Despite deliberately installing and customizing the Tracking Tools, Daybreak disclaims any liability for its disclosure of Plaintiffs' Sensitive Health Information in its Motion to Dismiss. *See* ECF No. 18-1 (the "Motion" or "MTD"). In doing so, Daybreak asserts that Plaintiffs lack Article III because they have not pleaded the requisite injury to support all of their causes of action, relying primarily on cases finding that disclosures of mundane browsing information do not inflict a privacy harm. These arguments must fail. Plaintiffs do not allege the disclosure of mere browsing information. They allege disclosure of protected Sensitive Health Information which Daybreak was obligated to keep confidential under federal law. Ninth Circuit courts ubiquitously find such disclosures to inflict a privacy injury. Daybreak makes no attempt to grapple with this binding authority, instead hiding behind a smokescreen of inapposite caselaw.

Daybreak's argument that it cannot be liable under the Electronic Communications Privacy Act ("ECPA") also fails. *See* MTD at 28-9. Plaintiff's allegations that Daybreak installed and configured the Meta Pixel with the intent to disclose her PHI to Google and Facebook establishes that it acted with the purpose of committing the underlying crime or tort. *See e.g.* FAC ¶ 103. In addition, the allegation that Daybreak was motivated by financial gain does not obviate its criminal intent. Finally, as courts have consistently held, Daybreak's criminal disclosure of Plaintiffs' Sensitive Health Information through the Tracking Tools was separate and distinct from

the improper interception at issue in Plaintiff's ECPA claim. *See R.S. v. Prime Healthcare Servs.,* 2025 U.S. Dist. LEXIS 6338, at *16 (C.D. Cal. Jan. 13, 2025) (holding that "the intent to disclose private information predates and is distinct from the interception itself.").

For these reasons and others elaborated on below, Daybreak's Motion to Dismiss Plaintiffs' ECPA and common law claims should be denied.

## II. LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the burden of proof is on the movant, and the court draws all reasonable inferences in plaintiff's favor, assuming all well pleaded factual allegations to be true and determining whether they plausibly give rise to an entitlement to relief. *See, e.g., Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337– 38 (9th Cir. 1996). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that the plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement") (internal quotation marks omitted). Courts are instructed to freely grant leave to amend unless the defects identified could not possibly be cured. *See, e.g., Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## III. ARGUMENT

### A. PLAINTIFFS ALLEGE INJURY-IN-FACT SUFFICIENT FOR ARTICLE III STANDING.

Plaintiffs expressly pleaded they were injured by Daybreak's interception of their personal health information and subsequent disclosure of that information to third parties including Google and Meta. *See e.g.* FAC ¶ 17. Plaintiffs alleged a number of specific injuries, including invasion of their privacy in violation, diminution of value of

their private information, and ongoing risk of exposure of their privation information. *See Id*. ¶¶ 16-17. These allegations are sufficient to plausibly establish a concrete, particularized injury to confer standing under Article III. *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906 (N.D. Cal. 2026) (finding plaintiffs sufficiently pleaded an injury-in-fact to confer standing where they alleged operator of fitness and nutrition tracking website disclosed personal health information to third parties through web tracking technologies)

**i. Legal Standard.**

To have standing, a plaintiff must plead facts showing she has suffered an injury in fact that is fairly traceable to the defendant's conduct and that is redressable by a favorable decision. *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). An injury in fact must be both "concrete and particularized" and "actual or imminent." *Id*. (citing *Lujan*, 504 U.S. at 560–61). Daybreak challenges only whether Plaintiffs' alleged injuries are concrete. *See* MTD at 12.

This argument must fail. Intangible harms constitute concrete injury where they have "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms, **disclosure of private information, and intrusion upon seclusion**." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) (emphasis added). As the Ninth Circuit made explicit in *In re Facebook Inc. Internet Tracking Litigation* ("*Facebook Tracking*"), data tracking and collection practices which "cause harm or a material risk of harm to [an individual's] interest in controlling their personal information" constitute a "concrete injury sufficient to confer standing." 956 F.3d 589, 598-99 (9th Cir. 2020). *Facebook Tracking* remains good law following *TransUnion*. *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1193 (S.D. Cal. 2024); *Deivaprakash v. Condé Nast Digit.*, 2025 U.S. Dist. LEXIS 172906, at *10 n.4 (N.D. Cal. Sep. 4, 2025) (same). Likewise, the Ninth Circuit has held that

violation of statutes which codify "a common law privacy right 'give[] rise to a concrete injury sufficient to confer standing.'" *Jones v. Ford Motor Co*., 85 F.4th 570, 574 (9th Cir. 2023) (quoting *Facebook Tracking*, 956 F.3d at 598). As explained further below, Daybreak's disclosure of Plaintiffs' Sensitive Health Information inflicted a cognizable privacy injury under Article III.

**ii. Daybreak's Disclosure of Plaintiffs' Sensitive Health Information Inflicted a Cognizable Privacy Injury under Article III.**

In its Motion, Daybreak does not deny that it is a medical provider, boasting to the contrary that it offers patients a "prescribed" medical device in the form of an "obstructive sleep apnea testing and treatment solution that brings access to a long-standing, clinically-supported and dentist-directed oral appliance treatment ('OAT') alternative to Continuous Positive Airway Pressure ('CPAP') machines[.]" MTD at 8. Nor does Daybreak deny that Plaintiffs' personally identifiable Sensitive Health Information, including the responses to specific medical questions provided through the Sleep Apnea Assessment, constitute medical information. *See* § I, *supra*. Daybreak's disclosures of Plaintiffs' personally identifiable health information thus give rise to Article III standing. Indeed, "[p]rivate medical information is one type of disclosure that courts ***routinely find*** is sufficient to establish a concrete injury for purposes of Article III standing." *Aquino-Roraldo v. Med. Mgmt. Int'l, Inc.*, 2026 U.S. Dist. LEXIS 90289, at *11 (D. Or. Feb. 13, 2026) (emphasis added); *see also Campbell v. Select Med. Corp.*, 2026 U.S. Dist. LEXIS 156088, at *5 (C.D. Cal. July 14, 2026) (noting that disclosure of health information generally suffices to establish Article III standing); *Gliksman v. Healthline Media, LLC,* 2026 U.S. Dist. LEXIS 147639, at *10 (N.D. Cal. June 23, 2026) (plaintiff's allegations that health information was disclosed through Tracking Tools when he searched for and shared health-related articles were sufficient under Article III because "'[v]iolations of the right to privacy have long been actionable at common law,' and that 'right to privacy encompass[es] the individual's control of

information concerning his or her person'") (quoting *Facebook Tracking*, 956 F.3d at 598); *Ramirez v. Lasikmd USA, Inc*., 2026 U.S. Dist. LEXIS 14108, at *4 (S.D. Cal. Jan. 26, 2026) (allegations that "unauthorized tracking technology disclos[ed] [plaintiff's] personally identifiable, confidential medical information to Facebook" satisfied Article III); *Doe v. Regents of the Univ. of Cal.*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) ("Personal medical information is understood to be among the most sensitive information that could be collected about a person").

Plaintiffs allege precisely the same as in these cases (and others): that Daybreak configured the Tracking Tools on the Website to collect and transmit their Sensitive Health Information to unauthorized third parties to be used for targeting advertising. *See* FAC ¶¶ 4-16. Plaintiffs thus satisfy Article III's concrete injury requirement.

In opposing this well-settled authority, Daybreak relies on inapposite cases involving the disclosure of non-sensitive categories of information. For example, Daybreak leans heavily on the Ninth Circuit's recent decision in *Popa* but the facts of *Popa* are entirely distinct from those present here. *See Popa*, 153 F.4th at 784. First, *Popa* involved Microsoft's collection of user information through Microsoft Clarity, Microsoft's own proprietary Tracking Tool. *Id.* at 786. Consequently, the Ninth Circuit considered only the potential harm arising from the ***collection*** of user information in *Popa*, not the ***disclosure*** of that information to independent third parties as alleged by Plaintiffs. Moreover, the plaintiff's data in *Popa* related to her browsing pet supplies on the website www.petsuppliesplus.com. *Id*. at 786. As the court noted:

> At most, [Plaintiff] alleges that [the tracking software] gathered her pet-store preferences and her street name. To the extent Microsoft's tracking software could be offensive in particular circumstances (e.g., involving sensitive medical or financial information), [Plaintiff] does not plausibly allege the infringement of any such privacy interest.

*Id*. at 791 (emphasis in original). This lack of any "embarrassing, invasive, or otherwise private information collected by [the tracking software]" starkly contrasts with the HIPAA-protected Sensitive Health Information alleged by Plaintiffs. *Id*. Indeed, in its decision, the Ninth Circuit explicitly distinguished *Popa* from the present facts, holding that the *Popa* plaintiff did not allege the use of any "tracking software [that] *could* be offensive in particular circumstances (e.g., **involving sensitive medical or financial information**)[.]" *Id.* (emphasis added); *see also Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 867 (N.D. Cal. 2025) (distinguishing disclosure of medical information through Tracking Tools from facts of *Popa* and finding that plaintiffs had satisfied the injury-in fact requirement). Moreover, *Popa* further reiterated the Ninth Circuit's longstanding rule that violations of a statute codifying a substantive privacy right—such as HIPPA—give rise to concrete injury. *Popa*, 153 F.4th at 793-94. *Popa* is thus inapposite to the present case. It involves only data collection as opposed to disclosure, and retail browsing information instead of federally protected medical information.

The other cases cited by Daybreak fare no better. Most involve the same type of retail information at-issue in *Popa,* and none involve disclosure of HIPAA-protected medical information as is alleged here. *See Price v. Converse, Inc.*, 805 F. Supp. 3d 1102, 1105 (C.D. Cal. 2025) (disclosure relating to online shoe sales); *Bradshaw v. Lowe's Co*., 2025 U.S. Dist. LEXIS 223830, at *15 (S.D. Cal. Nov. 12, 2025) (same as to home improvement supplies); *Campbell v. Honey Sci., LLC*, 2026 U.S. Dist. LEXIS 133176, at *3 (N.D. Cal. June 15, 2026) (same as to e-retail coupons). *See* MTD at 14-15. The analysis of the privacy interests at stake in those cases simply "not directly applicable to intrusions concerning personal health information." *R.C. v. Walgreen Co*., 733 F. Supp. 3d 876, 892 (C.D. Cal. 2024) (contrasting health data with "location data and LinkedIn profiles").

Others are even more inapposite. *Ross v. Westchester Cty. Jail* considered sleep apnea-related information in the specific context of a Constitutional discrimination

claim—it did not address whether the disclosure of such information constituted a privacy violation. *See* 2012 U.S. Dist. LEXIS 3502, at *25-26 (S.D.N.Y. Jan. 11, 2012). In *James v. Allstate Ins. Co.*, the court found a legally protected privacy interest but found no violation because "'plaintiff allege[d] no use by the third party other than storing that information for [the defendant] to refer back to.'" 2023 U.S. Dist. LEXIS 228572, at *12-16 (N.D. Cal. Dec. 22, 2023) (quoting *Williams v. DDR Media, LLC*, 2023 U.S. Dist. LEXIS 145489, at *7 (N.D. Cal. Aug. 18, 2023)). In contrast, Plaintiffs allege at length that their information was used by Google and Facebook to fuel their massive targeted advertising operations. *See* FAC ¶¶ 79-112. And in *Wright v. TrueCare Prop. Holdings, LLC*, 2025 U.S. Dist. LEXIS 229707, at *12 (S.D. Cal. Nov. 21, 2025), the court found that the plaintiff's allegations "show only that she used [the defendant]'s website, but not how she used it or what her visits revealed about her healthcare information." Here, Plaintiffs identify the medical information Daybreak disclosed, including the specific medical products that they purchased, their past medical diagnosis, medical symptoms and treatments, and other the medical information that they provided through the Assessment. *See* FAC ¶¶ 22, 29, 37, 45, & 53.

In sum, Daybreak affirms that it is a medical provider, concedes that Plaintiffs allege the disclosure of medical information provided to it in connection with its medical services, and yet nonetheless fails to cite any case where a court held that the disclosure of such medical information through Tracking Tools was insufficient to establish Article III standing. As explained above, this argument is irreconcilable with Ninth Circuit law and must thus fail.[1]

---

[1] Daybreak also argues that Plaintiff Nigro's claims must fail in-part because "Daybreak was first formed in December 2022." MTD at 19 (emphasis in original). As an initial matter, Defendant's incorporation records do not contradict the Complaint. They show only when the current legal entity was formed in those states. They do not establish when the challenged website began operating, who operated it beforehand, whether

**B. PLAINTIFFS' ECPA CLAIM IS MERITORIOUS.**

A claim exists under the ECPA where a defendant intentionally uses or discloses the contents of an intercepted electronic communication. 18 U.S.C. § 2511(1)(c)-(d). Where, like here, the defendant is a party to the communication, liability may still be established through the "crime-tort exception" if the defendant's interception is "for the purpose of committing [a] criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). Plaintiffs' well-pled allegations satisfy this exception.

**i. Daybreak's Alleged Violation of HIPAA Is Sufficient to Invoke the Crime-Tort Exception.**

Plaintiffs allege that Daybreak intercepted their personal health information in violation of the ECPA. FAC ¶¶ 227–53. Plaintiffs specifically allege that Daybreak's purpose in doing so was to disclose Plaintiffs' "individually identifiable Sensitive Health Information to Google and Facebook without user authorization," which constitutes invasion of privacy and violation of HIPAA. *Id.* ¶ 240–44. Such allegations of a criminal or tortious purpose have repeatedly been held to establish the applicability of the crime-tort exception. *See, e.g.*, *In re BetterHelp, Inc. Data Disclosure Cases*, 2024 U.S. Dist. LEXIS 187442, at *4 (N.D. Cal. Oct. 15, 2024) (denying motion to dismiss as to ECPA claim where defendant "was committing the tort/crime of disclosing its customer's sensitive mental health-related information in violation of HIPAA"); *Castillo v. Costco Wholesale Corp.*, 2024 U.S. Dist. LEXIS 207197, at *7 (W.D. Wash. Nov. 14, 2024)

---

Defendant is a successor to a predecessor entity, or whether Defendant continued the same practices after formation. Further, Plaintiff Nigro provided the undersigned with two e-mails advertising Daybreak's "At-Home Sleep Test" which he received from Daybreak via the e-mail account "hello@thedaybreak.com" in March of 2022—earlier the date set forth in the Motion. Thus, Plaintiff Nigro has a good-faith basis for his factual allegations and dispensation of this factual dispute is improper prior to discovery. At most, Defendant raises factual disputes that cannot be resolved on a Rule 12(b)(6) motion.

(“Plaintiffs plausibly allege that the crime-tort exception applies because [the defendant] violated HIPAA.”); *Stein v. Edward-Elmhurst Health*, 2025 U.S. Dist. LEXIS 31273, at *11-12 (N.D. Ill. Feb. 21, 2025) (courts from “coast to coast have recognized that a violation of HIPAA can give rise to the crime-tort exception under the ECPA”) (collecting cases).

**ii. Plaintiffs Allege a Criminal and/or Tortious Purpose Separate from the Predicate Interception.**

The crime-tort exception requires a plaintiff to allege that their communications were “**intercepted** for the **purpose** of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.” 18 U.S.C.§ 2511(2)(d) (emphasis added). As one court in this Circuit explains:

> In setting forth the crime-tort exception, the Wiretap Act expressly distinguishes between the interception of communications and a separate criminal or tortious purpose by providing that the communication must be ‘intercepted for the purpose of committing any criminal or tortious act.’ The Wiretap Act does not distinguish between the use of communications and a separate criminal or tortious purpose. Indeed, the use of intercepted communications is often the criminal or tortious purpose.

*Costco*, 2024 U.S. Dist. LEXIS 207197, at *18-19. Here, the violation does not lie in the interception itself, but instead “stems from [Daybreak’s] *intentional* disclosure of the collected Private Information, which constitutes a ‘further impropriety’ independent and separate from [Daybreak’s] *interception*.” *Prime Healthcare*, 2025 U.S. Dist. LEXIS 6338 at *16 (quoting *Weston v. Lefiti*, 2024 U.S. App. LEXIS 27181, at *5 (9th

Cir. Oct. 25, 2024)).[2] Accordingly, "alleging a defendant intercepted data to use the data in violation of criminal or tort laws suffices to invoke the crime-tort exception." *Costco*, 2024 U.S. Dist. LEXIS 207197, at *18. Plaintiffs' allegations thus satisfy the crime-tort exception by showing that Daybreak intercepted their Sensitive Health Information with the purpose of disclosing it to unauthorized third parties in violation of HIPAA and common law privacy protections. *See id*.; *K.L. v. Legacy Health*, 2024 U.S. Dist. LEXIS 206864, at *13-14 (D. Or. Nov. 24, 2024) (agreeing "with the line of cases finding that violating HIPAA *can* constitute an independent criminal act for purposes of the carve-out to ECPA's party exception") (emphasis in original); *Doe v. Tenet Healthcare Corp*., 789 F. Supp. 3d 814, 849 (E.D. Cal. 2025) (crime-tort exception applied where the plaintiffs alleged that the defendants intercepted their information with the purpose of violating HIPAA); *Walgreen*, 733 F. Supp. 3d at 901-02 (allowing ECPA claim against website-operator to proceed where the plaintiffs stated a claim for invasion of privacy arising out the unauthorized disclosure of their health data, and accordingly, pled the defendant's "tortious intent").

The authority cited by Daybreak further supports this conclusion. In *Sussman v. ABC*, the Ninth Circuit found that illegally taped recordings made by an ABC journalist did not violate the ECPA because while plaintiffs "argue[d] that the taping itself was tortious" they made no allegations that ABC's use of the recordings—airing the tapes

[2] *See also Walgreen*, 733 F. Supp. 3d at 902 (denying motion to dismiss ECPA claim where plaintiffs' invasion of privacy claim was sufficiently pled); *Gaige v. Exer Holding Co., LLC*, 2025 U.S. Dist. LEXIS 17146, at *15 (C.D. Cal. Jan. 30, 2025) (finding the complaint sufficiently alleged an "illegitimate purpose that was at least a determining factor for defendant's actions" where plaintiff alleged violations of invasion of privacy"); *B.K. v. Desert Care Network*, 2024 U.S. Dist. LEXIS 18970, at *16 (C.D. Cal. Feb. 1, 2024) (finding the ECPA's one-party exemption did not apply because "[d]efendants disclosed these communications to Meta in violation of various state tort claims and state and federal laws" including common law invasion of privacy); *I.T. v. ChoicePoint LLC*, 2025 U.S. Dist. LEXIS 169202, at *22 (W.D. Wash. Aug. 29, 2025) (same as to HIPAA).

on its broadcast station—was illegal. 186 F.3d 1200, 1202 (9th Cir. 1999). As a result, the Ninth Circuit found that the crime-tort exception did not apply because "[w]here the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere." *Id.* at 1202-03. In contrast, Plaintiffs allege the exact opposite: not that the means of the interception were unlawful, but rather that the purpose of the interception was unlawful. Indeed, had Daybreak used the Tracking Tools to collect Plaintiffs' Sensitive Health Information solely for Daybreak's own records without disclosing the Sensitive Health Information to any third party, Plaintiffs would not have brought this action. A website operator's collection of user information from its own website, for its own use, is not a violation of law. Rather, Daybreak's knowing use of the Tracking Tools to <u>disclose</u> the intercepted Sensitive Health Information to unauthorized third parties for the third parties' unrestricted use constitutes a violation of law. While Daybreak attempts to collapse this distinction, "[m]ultiple courts have rejected this argument, concluding that an intent to disclose or use private information in violation of [statutory law] is distinct from the interception of the private information." *ChoicePoint*, 2025 U.S. Dist. LEXIS 169202, at *22-23 (collecting cases).

**iii. Daybreak's Purported Financial Motive Does Not Shield It from Liability.**

A plaintiff invoking the crime-tort exception need not plead that violation of HIPAA was the defendant's sole purpose to the exclusion of any other motivation, including monetary gain. "[E]ven if Defendant had a financial motive to facilitate marketing and advertisements by intercepting and disclosing certain information, 'the mere existence of a lawful purpose alone does not sanitize an interception that was also made for an illegitimate purpose.'" *Campbell*, 2026 U.S. Dist. LEXIS 156088, at *9 (quoting *Ramirez*, 2026 U.S. Dist. LEXIS 14108, at *8). Finding otherwise would fully defeat the purpose of the crime-tort exception by excluding "'otherwise criminal or tortious act[s] solely because [they are] also motivated by financial gain. The existence

of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime—it was to make money.'" *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1091 (N.D. Cal. 2025) (quoting *Stein*, 2025 U.S. Dist. LEXIS 31273, at *6). Indeed, "[c]rimes and torts often have financial motivations, and the statutory text broadly covers '*any* criminal or tortious act in violation of the Constitution or laws of the United States or of any State.'" *B.N. v. Or. Reprod. Med., LLC*, 2025 U.S. Dist. LEXIS 222638, at *11 (D. Or. Nov. 12, 2025) (quoting 18 U.S.C. § 2511(2)(d)) (emphasis in original).[3] Daybreak's contrary position would necessarily imply, for example, that "the ECPA would not prohibit a person from intercepting a communication with the intent to use that communication to blackmail so long as the ultimate reason for the blackmail was to make money." *Prime Healthcare*, 2025 U.S. Dist. LEXIS 6338, at *10. With blackmail, "[o]f course, [making money] is often the end goal, so under Daybreak's reading, "blackmail would rarely, if ever, violate the ECPA…. This cannot be the case." *Id*. at *20. Far from contradicting this principle, Daybreak's authority again supports Plaintiffs' position. Indeed, in *Sussman v. ABC,* the Ninth Circuit explicitly held, as Plaintiffs argue here, that "the existence of a lawful

---

[3] *See also Walgreen*, 733 F. Supp. 3d at 901 ("But even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims."); *Tenet Healthcare*, 789 F. Supp. at 850 ("Plaintiffs' allegations that Defendants were financially motivated to disclose their information to Meta do not immunize Defendants from liability under the ECPA").

purpose does not mean that the interception is not also for a tortious or unlawful purpose." 186 F.3d at 1202.[4]

Because Plaintiffs have plausibly alleged that Daybreak intercepted their communications with the purpose of disclosing their Sensitive Health Information in violation of HIPAA, Plaintiffs have properly invoked the crime-tort exception, and the Court should deny Daybreak's Motion to Dismiss as to Count VII for violation of ECPA.

## C. PLAINTIFFS' INVASION OF PRIVACY CLAIM IS PROPER.

To state a claim for intrusion upon seclusion under California common law, "[p]laintiffs must show that: (1) a defendant 'intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy,' and (2) that the intrusion was 'highly offensive' to a reasonable person." *Silver v. Stripe Inc.,* 2021 U.S. Dist. LEXIS 141090, *16 (N.D. Cal. July 28, 2021) (quoting *Hernandez v. Hillsides, Inc.,* 47 Cal 4th 272, 287 (2009)). Plaintiffs' allegations satisfy both elements.

### i. Plaintiffs Allege an Intrusion into Their Privacy.

As the Supreme Court recently held, a reasonable expectation of privacy may exist when an individual voluntarily shares information with a third-party service provider where the individual would have reasonably expected that the information would be kept private. *See Chatrie v. United States*, 225 L.Ed.2d 793, 812 (U.S. 2026) (finding a privacy interest in "materials—think of emails, documents, photographs, or calendars—that even if stored on [third-party] servers, a user reasonably views as his

---

[4] The other cases cited by Daybreak are inapposite. *In re Google Inc. Gmail Litigation* considered whether class-wide issues would predominate over individual ones for purposes of class certification; it did not decide whether the plaintiff had stated a claim under ECPA. 2014 U.S. Dist. LEXIS 36957, at *44 (N.D. Cal. Mar. 18, 2014). And in *Wright*, the court "defer[red] ruling on the party-exception rule at this time." 2025 U.S. Dist. LEXIS 229707, at *10.

own" and "reasonably expects to be shielded from the 'inquisitive eyes'"). Indeed, the California Supreme Court has explicitly held that in the context of an invasion of privacy claim, "the seclusion referred to need not be absolute. 'Like 'privacy,' the concept of 'seclusion' is relative. **The mere fact that a person can be seen by someone does not automatically mean that he or she can legally be forced to be subject to being seen by everyone**.'" *Sanders v. Am. Broad. Companies, Inc.,* 20 Cal. 4th 907, 916 (1999) (quoting 1 McCarthy, THE RIGHTS OF PUBLICITY AND PRIVACY (1998) § 5.10[A][2], p. 5-120.1) (emphasis added); *see also Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1270 (9th Cir. 1998) (reversing grant of summary judgment for defendant employers on invasion of privacy claim where the plaintiff employees agreed to give blood and urine samples for an employment-related health exams without realizing that the defendants would conduct additional intrusive medical and genetic testing on those samples for syphilis, pregnancy, and sickle cell traits); *Sanchez-Scott v. Alza Pharm.*, 86 Cal. App. 4th 365 (Ct. App. 2001) (reversing dismissal of intrusion upon seclusion claim where doctor allegedly obtained plaintiff's consent to a breast examination in front of a drug salesperson without disclosing the salesperson was not a medical professional).

This precedent applies in equal force to digital communications. As many Ninth Circuit courts have found in similar internet surveillance matters, California law authorizes invasion of privacy claims to remedy the use of Tracking Tools to intercept and disclose the contents of communications as to which a website user has an expectation of privacy. *See, e.g. D'Antonio v. Smith & Wesson Inc.*, 2026 U.S. Dist. LEXIS 32257, at *7 (N.D. Cal. Feb. 17, 2026) (finding intentional intrusion where plaintiff alleged the defendant "chose, caused, and allowed third-party tracking tools to integrate into its website pursuant to agreements with those third parties"); *Cherkin v. PowerSchool Holdings, Inc.*, 2025 U.S. Dist. LEXIS 48424, at *2 (N.D. Cal. Mar. 17, 2025) (rejecting same argument made by Daybreak as "not well taken" because

disclosure for "bona fide" purposes does not relinquish a right to privacy in that information nor control over how it "will be used . . . and by whom"); *Lau v. Gen. Digit. Inc.*, 2024 U.S. Dist. LEXIS 81310, at *8 (N.D. Cal. Apr. 3, 2024) (finding the defendant could not "escape liability [for invasion of privacy] by arguing that there is no 'intrusion'" because the plaintiffs "did not expect for [the program] to collect and store extensive dossiers of their browsing data that could later be sold to third-party advertisers"); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1060 (N.D. Cal. 2014) (finding plaintiffs stated an intrusion upon seclusion claim where plaintiff download defendant's app which harvested cellular data and used it for commercial purposes because allegations that consent was fraudulently obtained supported a finding that plaintiffs had a reasonable expectation of privacy in the copied data); *Doe v. Call-On Doc*, 2025 U.S. Dist. LEXIS 113269, at *48 (S.D. Cal. June 13, 2025) (similar).

Like in these cases, Plaintiffs allege that they provided their medical information for a limited purpose—receiving Daybreak's medical services—with no knowledge that their Sensitive Health Information would be transmitted to unauthorized third parties for the use in targeted advertising. *See* FAC ¶¶ 15-16. Under the controlling law discussed above, Daybreak cannot now claim authorization to disclose that information to unidentified third-party advertisers in violation of federal law without Plaintiffs' knowledge or consent. Plaintiffs therefore properly plead an intrusion.[5]

[5] The cases cited by Daybreak are not analogous, and do not compel a different result. In *Khamooshi v. Politico LLC*, the court analyzed the disclosure of only IP addresses in the context of Article III, finding that plaintiffs failed to allege the disclosure of sensitive information as to bare device information. 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025). And, in *Banga v. Equifax Info. Servs. LLC*, the credit report was composed of information compiled by the defendant, not provided by the plaintiff, and also consisted of non-sensitive contact information. 2015 U.S. Dist. LEXIS 79342, at *25 (N.D. Cal. June 18, 2015).

### ii. Daybreak's Intrusion Was Highly Offensive.

"Personal medical information is understood to be among the most sensitive information that could be collected about a person[.]" *Regents of the Univ. of Cal.*, 672 F. Supp. 3d at 820; *see also Desert Care*, 2024 U.S. Dist. LEXIS 18970, at *25 ("Patients' right to privacy in their medical records is well-settled"). Accordingly, district courts routinely refuse to dismiss invasion of privacy claims stemming from the unauthorized disclosure of medical information. *See*, *e.g.*, *Doe v. N. Cal. Fertility Med. Ctr.*, 2024 U.S. Dist. LEXIS 12175, at *16 (E.D. Cal. Jan. 22, 2024) (differentiating medical information from other sensitive information like Social Security numbers and collecting cases); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 801 (N.D. Cal. 2022) (finding that the defendant could not identify a single case wherein a court found that the disclosure of protected health information was not highly offensive).[6] Plaintiffs thus plead a highly offensive intrusion into their sphere of privacy, and Daybreak's Motion to Dismiss must be denies as to their invasion of privacy claim.

## D. PLAINTIFFS PROPERLY ALLEGE A CLAIM FOR NEGLIGENCE.

To state a claim for negligence, a plaintiff must establish: (1) the existence of a duty of care, (2) breach of that duty, (3) causation, and (4) damages. *Dent v. Nat'l Football League*, 902 F.3d 1109, 1117 (9th Cir. 2018). In its Motion, Daybreak solely contests damages. Contrary to Daybreak's arguments, Plaintiffs adequately allege that they suffered numerous injuries as a result of Daybreak's surreptitious use of Tracking Tools to disclose their Sensitive Health Information to the Tracking Tool Providers,

[6] Moreover, if the Court is inclined to analyze whether Plaintiffs' expectations of privacy were reasonable, that analysis requires discovery. *See In re Meta Pixel*, 647 F. Supp. 3d at 799 (California courts are "generally hesitant" to decide privacy claims on the pleadings); *Silver*, 2021 U.S. Dist. LEXIS 141090, at *15 ("plaintiffs' allegations that [defendant] compiled and disseminated plaintiffs' sensitive data precludes the Court from finding that plaintiffs have no reasonable expectation of privacy"); *Regents of the Univ. of Cal.*, 672 F. Supp. 3d at 820 (same); *St. Aubin v. Carbon Health Techs., Inc.*, 2024 U.S. Dist. LEXIS 179067, at *37 (N.D. Cal. Oct. 1, 2024) (same).

including (i) benefit of the bargain damages, (ii) diminution of value damages, and (iii) invasion of privacy. FAC ¶ 17; *see also* § III(A), *supra*.

**i. Benefit of The Bargain.**

"A significant body of case law in the Ninth Circuit supports a benefit-of-the-bargain theory based on an implied contract that a defendant will safeguard PII when it is provided by a customer in exchange for goods and services." *Smith v. Findlay Auto., Inc.*, 2025 U.S. Dist. LEXIS 60934, at *12 (D. Nev. Mar. 31, 2025) (internal quotation marks and citation omitted). As discussed in greater detail in § IV(E), *infra*, Plaintiffs allege the existence of such an implied contract under which they expected reasonable data security. Plaintiffs further allege that they would have paid substantially less for Daybreak's products and services had they known that their Sensitive Health Information would be disclosed. *See* FAC ¶¶ 198, 209, 212. These allegations suffice to plead that Plaintiffs lost the benefit of their bargain with Daybreak. *See, e.g., N. Cal. Fertility Med.*, 2024 U.S. Dist. LEXIS 12175, at *21 (finding plaintiff sufficiently alleged benefit-of-the-bargain damages where she alleged that "had she known defendant would use such poor security practices, she would not have paid for fertility treatment from defendant"); *Plaintiffs v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1190 (D. Nev. 2022) (finding "general factual allegations about the plaintiff's expectations for data security and the contours of the parties' bargain" sufficient to allege benefit of the bargain damages and collecting cases).

**ii. Diminution of Value.**

"Diminution in value of personal information can be a viable theory of damages." *Pruchnicki v. Envision Healthcare Corp.*, 430 F. Supp. 3d 1226, 1234 (D. Nev. 2020), *aff'd*, 845 Fed. App'x 613 (9th Cir. 2021). Plaintiffs allege that their Sensitive Health Information has financial value, that there exists a market for their Sensitive Health Information, and that Daybreak's unauthorized disclosure of their Sensitive Health Information resulted in the diminution of value of their Information. FAC ¶¶ 123-28.

This is sufficient to allege cognizable harm. *See, e.g., Ji v. Naver Corp.*, 2023 U.S. Dist. LEXIS 178311, *18-19 (N.D. Cal. Oct. 3, 2023) (denying motion to dismiss claims challenging plaintiffs' diminution of value theory where plaintiffs "cite to sources that describe personal data as an important 'currency' of the modern economy that has significant and calculable economic value"); *Archambault v. Riverside Resort & Casino, Inc.*, 2025 U.S. Dist. LEXIS 176564, at *16 (D. Nev. Sept. 9, 2025) (same where plaintiffs alleged that their PII has inherent market value and its value diminished by its unauthorized release).

The economic loss doctrine does not bar Plaintiffs' negligence claim. Under the economic loss doctrine, "purely economic losses are not recoverable in tort." *Nucal Foods v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1028 (E.D. Cal. 2013) (citations omitted). In the data breach context, courts within the Ninth Circuit have found that an individual's "loss of control" over their personal information and "the accompanying impairment in value" of personal information "constitutes non-economic harms." *MGM Resorts Int'l*, 638 F. Supp. 3d at 1188 (collecting cases). The same must be true in the data privacy context. "Indeed, it is difficult to conceive how the dissemination of an individual's [Sensitive Health Information] does not necessarily diminish their control over their digital and physical identity." *Id.* Accordingly, Plaintiffs' allegations implicates non-economic harms and the economic loss doctrine does not bar Plaintiffs' negligence claim.

**iii. Invasion of Privacy.**

Finally—and crucially—Plaintiffs allege that Daybreak's breach of their duty caused them to suffer an invasion of privacy. FAC ¶ 181. "[I]n the context of negligence damages," invasion of privacy is a cognizable harm. *Archambault*, 2025 U.S. Dist. LEXIS 176564, at *18; *see also Desert Care*, 2024 U.S. Dist. LEXIS 18970, at *28 (finding plaintiffs' allegations that certain categories of medical information were "improperly accessed, disclosed, and otherwise compromised" were sufficient to

establish harm); *In re Facebook, Inc.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (finding plaintiffs "alleged present and non-speculative privacy injuries sufficient to state negligence claim predicated on defendant's alleged collection and dissemination of user information to third parties). Plaintiffs thus satisfy the damages element of their negligence claim under at least three theories, and Daybreak's Motion to Dismiss should be denied as to their negligence count.

**E. PLAINTIFFS' IMPLIED CONTRACT CLAIM IS WELL PLED.**

"[I]n California, a cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 U.S. Dist. LEXIS 66733, at *59 (N.D. Cal. Apr. 11, 2024) (quotations omitted).

Plaintiffs allege that they entered into an implied contract with Daybreak when they provided their Sensitive Health Information to Daybreak in exchange for Daybreak's services as well as Daybreak's promise to safeguard their Sensitive Health Information and to not disclose it without consent. FAC ¶¶ 196-97. Plaintiffs would not have entrusted Daybreak with their Sensitive Health Information in the absence of an implied agreement requiring Daybreak to protect their Sensitive Health Information from unauthorized disclosure to third parties for advertising and marketing purposes. *Id.* ¶ 198. Daybreak breached the implied contract by disclosing Plaintiffs' Sensitive Health Information to third parties such as Google and Facebook. *Id.* ¶ 199.

Courts applying California law have found similar allegations sufficient to sustain a breach of implied contract claim. *See e.g., Kaiser Found. Health Plan*, 2024 U.S. Dist. LEXIS 66733, at *61 (denying dismissal where plaintiffs alleged an implied contract was created by virtue of the confidential health care provider and patient relationship between the parties, and defendant breached the implied contract by disclosing plaintiffs' patient status, personally identifiable data, and confidential

communications to third parties); *BetterHelp*, 2024 U.S. Dist. LEXIS 187442, at *9 (same, where plaintiffs alleged that they entered into contractual relationships with defendant, and that defendant's various promises of confidentiality were part of the terms of those contracts); *C.M. v. MarinHealth Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 10189, at *9 (N.D. Cal. Jan. 19, 2024) (same, in the context of healthcare services and an ongoing relationship between the parties that plaintiff alleged was based in part on defendant's security promises); *Castillo v. Seagate Tech., LLC*, 2016 U.S. Dist. LEXIS 187428, at *29 (N.D. Cal. Sep. 14, 2016) (denying motion to dismiss breach of implied contract claim and observing that "it is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of…sensitive personal information would not imply the recipient's assent to protect the information sufficiently."); *Rudolph v. Hudson's Bay Co.*, 2019 U.S. Dist. LEXIS 77665, at *34 (S.D.N.Y. May 7, 2019) ("Other courts applying California law have concluded that an implied contract is formed where a person discloses sensitive information in order to receive a benefit, with the expectation that such information will be protected") (collecting cases).[7]

Further, Plaintiffs have adequately alleged that their Sensitive Health Information, including health information, has financial value because such information was exchanged by Daybreak to avail cost-effective marketing and advertising services. FAC ¶¶ 121-28; *see also Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 815 (N.D. Cal.

---

[7] *See also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 U.S. Dist. LEXIS 140212, at *166 (N.D. Cal. Aug. 30, 2017) (allegations that an implied contract was created when plaintiffs opened accounts with defendants, that the terms of those implied contracts were set forth in the terms of service and privacy policies, and that defendants breached these implied contracts by not adequately protecting plaintiffs' personally identifying information sufficient to state a claim); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1144 (C.D. Cal. 2021) (allegations that plaintiffs gave their private information to defendants to avail their services with the understanding that defendants would take adequate measures to protect their information sufficient to state a claim).

2011) (recognizing plaintiff whose information was misappropriated by Facebook "may properly seek restitution"); *In re Anthem Inc. Data Breach Litig.*, 2016 U.S. Dist. LEXIS 70594, at *14 (N.D. Cal. May 27, 2016) (finding that plaintiffs' personal information was stolen in a data breach and thus lost value, which constituted an injury to plaintiffs).

Finally, Daybreak's purported Terms of Use and Privacy Policy do not foreclose Plaintiffs' breach of implied contract claim. Contrary to Daybreak's assertion, Plaintiffs make no mention of these documents in their Amended Complaint. To the extent Daybreak contends that these documents disclose or govern the conduct at issue, Plaintiffs repeatedly allege that Daybreak failed to inform them that it was sharing their Sensitive Health Information with third parties, or obtain their consent for such disclosures. FAC ¶¶ 114-20. Plaintiffs also explain that these surreptitious tracking practices are nearly impossible to discern even when disclosed in website privacy policies. *Id.* ¶¶ 86-87. Daybreak cannot therefore construe Plaintiffs' reference to its "express promises on the Website" as any acknowledgment or acceptance of its Terms of Use or Privacy Policy.

Accordingly, because "the existence of a written contract does not preclude the existence of an implied term" and "[t]he question whether such an implied-in-fact agreement exists is a factual question[,]" Daybreak's Motion must be denied as to Plaintiffs' breach of implied contract claim. *Sloan v. Verily Life Scis. LLC*, 2025 U.S. Dist. LEXIS 175076, at *14-15 (N.D. Cal. Sep. 8, 2025).

### F. PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS PROPER

While Daybreak argues that unjust enrichment "is not an independent cause of action," (MTD at 25), the Ninth Circuit has held that "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *see also ESG Capital Partners, Ltd. P'ship v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016)

(the Ninth Circuit "has construed the common law to allow an unjust enrichment cause of action through quasi-contract."). Further, Plaintiffs' unjust enrichment claim is pled in the alternative, FAC ¶ 203, and the fact "[t]hat Plaintiffs have also advanced claims for which legal remedies may be available does not bar their unjust enrichment cause of action at the pleading stage." *D.B. v. Bellesa Enters. U.S. Inc.*, 2026 U.S. Dist. LEXIS 156101, at *53 (C.D. Cal. July 14, 2026); *see also MarinHealth*, 2024 U.S. Dist. LEXIS 10189, at *15 (denying dismissal of "duplicative" unjust enrichment claim at the pleading stage).

Moreover, the Ninth Circuit has held that a plaintiff is entitled to disgorgement of unjustly earned profits regardless of whether a defendant's actions "caused a plaintiff to directly expend his or her own financial resources or whether a defendant's actions directly caused the plaintiffs' property to become less valuable." *Facebook Tracking*, 956 F.3d at 600. Accordingly, "even if plaintiffs have suffered no economic loss from the disclosure of their plausibly private information, they are allowed to proceed through the pleadings stage with a claim for unjust enrichment to recover the gains that a defendant realized from its allegedly improper conduct." *Gabrielli*, 815 F. Supp. 3d at 875.

Here, Plaintiffs allege that their data has advertising, marketing, and sales value to Daybreak, that Daybreak collected and transmitted Plaintiffs' data without their consent, and that Plaintiffs would not have accessed or used the website had they known that their personal information would be intercepted and disclosed. FAC ¶¶ 117-22, 209. Further, Plaintiffs allege that their Sensitive Health Information has financial value. *Id*. ¶¶ 123-28. This value is not speculative. Plaintiffs allege that Daybreak "received compensation in the form of advanced advertising services and cost-effective marketing on third-party platforms in exchange for allowing Google and Facebook to collect Plaintiffs' and Class Members' Sensitive Health Information." *Id*. ¶ 122. "These allegations are sufficient at this stage to plead an unjust enrichment claim." *Cheung v.*

*Slickdeals, LLC*, 2026 U.S. Dist. LEXIS 143937, at *52-53 (C.D. Cal. June 29, 2026). Indeed, courts in this District and across the Ninth Circuit routinely allow unjust enrichment claims to proceed in pixel and data misuse cases like this one. *See e.g., E.H. v. Lifelong Adoptions, Inc*., 2026 U.S. Dist. LEXIS 164906, at *23 (E.D. Cal. July 24, 2026) (denying motion to dismiss unjust enrichment claim where plaintiff alleged that the disclosure of her sensitive information benefitted defendant, as evidenced by the value of the services that defendant received from Google and Facebook in exchange for enabling and configuring tracking tools on its website); *Katz-Lacabe v. Oracle Am., Inc*., 2023 U.S. Dist. LEXIS 178369, at *6 (N.D. Cal. Oct. 3, 2023) (plaintiffs sufficiently pled facts to establish unjust enrichment where they would not have visited defendant's websites with surreptitiously installed tracking technologies that conferred a benefit to defendant at the expense of plaintiffs' privacy); *A.J. v. LMND Med. Grp.*, 2024 U.S. Dist. LEXIS 194480, at *4 (N.D. Cal. Oct. 25, 2024) (allegation that defendant benefitted from plaintiffs' information by exchanging it without their consent and that plaintiffs failed to receive the benefit of their bargain sufficient to preclude dismissal).

Therefore, Plaintiffs have adequately alleged a claim for unjust enrichment.

### G. PLAINTIFFS' BREACH OF CONFIDENCE CLAIM IS SUFFICIENTLY PLED

A breach of confidence occurs when "(1) the plaintiff conveyed 'confidential and novel information' to the defendant; (2) the defendant had knowledge that the information was being disclosed in confidence; (3) there was an understanding between the defendant and the plaintiff that the confidence be maintained; and (4) there was a disclosure or use in violation of the understanding." *Ambry Genetics*, 567 F. Supp. 3d at 1146 (quoting *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1226-27 (9th Cir. 1997)). Plaintiffs allege that they disclosed their confidential medical information to Daybreak, that Plaintiffs reasonably expected Daybreak to keep their

medical information confidential, that Daybreak had a legal duty to keep their information confidential, and that Daybreak instead shared Plaintiffs' confidential information with third parties, causing a breach of confidence. FAC, ¶¶ 218-226. In similar circumstances, "California courts have found that the 'ordinary meaning' of the word 'disclosure' 'suggest[s] that disclosure occurs when the health care provider affirmatively shares medical information with another person or entity.'" *Ambry Genetics*, 567 F. Supp. 3d at 1146 (quoting *Sutter Health v. Superior Ct.*, 227 Cal. App. 4th 1546, 1555-56, 174 Cal. Rptr. 3d 653 (2014)); *see also Toy v. Life Line Screening of Am. Ltd.*, 2024 U.S. Dist. LEXIS 88872, at *8 (N.D. Cal. Mar. 19, 2024) (allegations defendant had "obligations under federal and state law to keep her health information confidential but nonetheless disclosed that information to third parties … suffice to state a claim for breach of confidence."). In *Ambry Genetics*, the plaintiffs alleged that they disclosed genetic information to the defendants, and that the information was stolen from the defendants in a data breach. 567 F. Supp. 3d at 1138. The court found these allegations sufficient to allege a data breach. Here, where Plaintiffs allege intentional disclosures, the allegations are likewise sufficient.

## IV. CONCLUSION

For these reasons, Daybreak's Motion to Dismiss should be **DENIED**.[8]

[8] Plaintiffs do not dispute Defendant's arguments as to their Breach of Fiduciary Duty claim.

Dated: August 7, 2026

Respectfully submitted,

/s/ Sonjay C. Singh
Sonjay C. Singh (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
400 East Pratt Street
8th Floor - #16946751
Baltimore, MD 21202
Tel: (772) 783-8436
E: *ssingh@sirillp.com*

Matthew J. Langley (SBN 342286)
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, IL 60614
Tel: (773) 554-9354
E: *matt@almeidalawgroup.com*

*Attorneys for Plaintiffs and the Class*